Teresa McCURTY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–3947C.

United States Court of Federal Claims.

Sept. 28, 1993.

John Thrasher, Indianapolis, IN, for plaintiff.

Lisa B. Donis, U.S. Dept. of Justice, Civ. Div., Washington, DC, with whom were Thomas W. Petersen, Asst. Director, David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## *OPINION*

SMITH, Chief Judge.

This matter is before the court on defendant's Motion for Summary Judgment.[1] Plaintiff, Teresa McCurty, brought this action alleging a breach of contract for the Army's failure to deliver her household goods and personal belongings to plaintiff at her mother's residence in Indianapolis, Indiana. Defendant asserts that Ms. McCurty did not enter into a contract with the United States Army, and, therefore, that this court has no jurisdiction over plaintiff's claim. Based upon the briefs and other papers submitted, the caselaw, and after hearing oral argument, the court finds that it has jurisdiction to consider plaintiff's contract claim, but grants defendant's Motion for Summary Judgment on the merits.

### FACTS

Ms. McCurty was formerly married to Army Sergeant Thomas W. Trotter, III. Prior to September 17, 1985, Sgt. Trotter was assigned to the 178th Signal Company in Heidelberg, Germany, where plaintiff lived with him. By orders dated September 17, 1985, Sgt. Trotter was issued a permanent change of station, and reassigned to the United States Army Separation Transfer Point at Fort Dix, New Jersey. These orders also included a concurrent travel authorization for plaintiff. On November 21, 1985, amended travel orders were issued, authorizing plaintiff to delay her departure from Germany. The travel orders also included a

1. Defendant's motion was brought pursuant to Rule 56 rather than Rule 12(b)(4) because defendant relies on documents outside the pleadings.

provision for the shipment of the Trotters' household goods from Germany to Fort Benjamin Harrison in Indianapolis, Indiana. When, on December 5, 1985, the transportation officials came to pick up the Trotters' property for delivery, plaintiff paid an extra mileage charge of approximately $19 to cover the excess costs of shipping to Indianapolis instead of Baltimore. In January 1986, Sgt. Trotter had the shipment diverted to Philadelphia, Pennsylvania.

On December 3, 1987, Ms. McCurty filed a claim of $14,469 for the alleged value of the household goods with the Army Claims Judge Advocate at Ft. Benjamin Harrison, Indiana. That claim was denied on November 1, 1989. In March 1988, plaintiff was granted a divorce from Sgt. Trotter by the state of Indiana. Pursuant to the divorce, the Indiana court awarded plaintiff a $25,000 property settlement which represented the diverted household goods. Sgt. Trotter has not paid the amount.

Seeking the recovery of the value of the household property, Ms. McCurty filed a suit against the United States, pursuant to the Federal Tort Claims Act, in the United States District Court for the Southern District of Indiana on May 3, 1990. When the government filed a motion to dismiss the case, plaintiff voluntarily dismissed her complaint in the district court, and requested that the district court transfer her complaint to this court. The district court then transferred the case. See 28 U.S.C. § 1631 (1982).

## DISCUSSION

### I. STANDARD OF REVIEW

■ Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56. The burden of showing the absence of a genuine issue as to any material

fact lies with the movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). That burden is met by showing that there is no evidence to support the non-movant's case. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Once the movant demonstrates that there is no material fact in issue, the burden shifts to the non-movant to provide evidence of specific facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In ruling on a summary judgment motion, the court does not weigh the evidence or determine credibility, but must view all materials submitted in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). He may not simply "rest on mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In this case, assuming the truth of the statements in plaintiff's submissions, she has failed to establish any issues of material fact. Accordingly, the disputed issues in this case are legal, not factual, and it is ripe for summary judgment.

### II. ESTOPPEL

The government argues that plaintiff had neither an express nor an implied contract with the United States Army, and therefore, that she has not met the jurisdictional prerequisite under the Tucker Act to come before the Court of Federal Claims.[2] Plaintiff counters that the government is estopped from arguing that no such contract existed.

■ It should first be noted that the jurisdiction of this court is, like every state or federal American court, limited by the

---

**2.** Jurisdiction under the Tucker Act is limited to suits "founded either upon the Constitution or an Act of Congress, or any regulation of an executive department or upon any express or implied

contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1491(a)(1) (1988).

Constitution and by various statutes. While it has been said that this court is one of "limited jurisdiction," that phrase is both redundant and illogical. All jurisdiction is inherently limited. The very meaning of jurisdiction in our law is the scope of authority granted by the legislature to the courts. Only the court of an absolute king, tsar or sultan would have an "unlimited jurisdiction." In a free republic all courts, and indeed all arms of the government, are of "limited jurisdiction." In fact, the genius of our Constitution is the triple limit imposed by the concepts of federalism, separation of powers and the doctrine of enumerated powers. Neither the executive branch nor another court can confer jurisdiction on the United States Court of Federal Claims. That decision was left by the wisdom of the Framers to the lawmaking power of the President and Congress. This court, applying the pertinent law, may evaluate its own jurisdiction at any time. *Berdick v. United States*, 612 F.2d 533, 536, 222 Ct.Cl. 94, 99 (1979). In fact, it must so evaluate its jurisdiction anytime a serious question of jurisdiction is raised. Moreover, it is plaintiff's burden to establish jurisdiction. *See Montego Bay Imports, Ltd. v. United States*, 25 Cl.Ct. 639, 648 (1992).

This case was transferred from the United States District Court for the Southern District of Indiana. According to plaintiff, the complaint was drafted to sound in both breach of contract and conversion. Moreover, it was plaintiff's strong belief that her complaint was filed on the last day allowed under Indiana law for filing suit to recover for damage to property. In the district court, the government moved for dismissal on the grounds that the Court of Federal Claims had exclusive jurisdiction because this suit was based on a contract and damages were alleged to be in excess of $10,000. Fearing that the case would be dismissed outright, because it would have been impossible to timely refile in a different court, plaintiff relied on defendant's position and voluntarily removed this action from the district court to the Court of Federal Claims. 28 U.S.C. § 1631 (1988). Plaintiff now argues that counsel for the government in the district court and counsel for the government in this court should not be allowed mutually contradictory positions against plaintiff's claim.

The Court of Claims faced an analogous case in *Diamond v. United States*, 657 F.2d 1194, 228 Ct.Cl. 493 (1981). In *Diamond,* the district court, upon defendant's motion, transferred the case to the Court of Claims on the grounds that it had exclusive jurisdiction. Upon the case's transfer, the government again moved for dismissal alleging lack of jurisdiction. Acknowledging that at first blush such conduct might appear to be a hyper-technical whipsawing of plaintiff, the court determined that defendant was actually contending that jurisdiction is lacking before the Court of Claims except in so far as plaintiff could base its claim on a contract implied in fact. With respect to that implied in fact contract claim, it should be dismissed on the merits because it was defective. *Diamond,* 657 F.2d at 1196–97. As in *Diamond,* this court understands the government to be arguing that the contract claims should be dismissed on the merits, and not for lack of jurisdiction. On other theories of recovery, the government correctly argues a lack of jurisdiction.

Plaintiff states that it is not her position that this court has jurisdiction because Mr. Thomas Kieper, Assistant United States Attorney for the Southern District of Indiana, said that it did. Rather, plaintiff maintains that Mr. Kieper, on behalf of his client, admitted by his actions that there was a contract between the parties and, therefore, that the government should be held to that admission. However, plaintiff's estoppel argument is without merit.

While stopping short of declaring an across-the-board no-estoppel rule, the Supreme Court in *O.P.M. v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), emphatically stated that, "[a]s for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds." 496 U.S. at 434, 110 S.Ct. at 2476. Plaintiff seeks to circumvent the rule announced by the Supreme Court by contending that estoppel should apply in this case because, by defending itself in a lawsuit,

defendant was acting in its proprietary capacity, not its sovereign capacity. This contention is not supported by caselaw. In *Richmond,* where the government was also defending itself in a lawsuit, the Supreme Court made no effort to address whether the defendant in that case was acting in its proprietary capacity. It should be noted, however, that in *Richmond* the government was acting in the role of an employer, traditionally a proprietary role. Also in *Richmond,* and cases cited therein, plaintiff was denied estoppel even though he clearly relied on erroneous oral and written information provided by a representative of the government. The Court, while recognizing "the serious hardship caused by the agent's misinformation," nonetheless rejected plaintiff's arguments. 496 U.S. at 420, 110 S.Ct. at 2469. To claims of inequity, the Court answered that the purpose of the rule "is to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." 496 U.S. at 428, 110 S.Ct. at 2473. As the court finds it does have jurisdiction to consider the merits of plaintiff's contract claims, plaintiff suffers no hardship warranting a finding of estoppel.

■ Moreover, plaintiff cannot support her contention that the doctrine of estoppel would apply had defendant not been the government. The traditional elements of estoppel are the following:

(1) [t]he party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the true facts; and

(4) he must rely on the former's conduct to his injury.

*United States v. Georgia–Pacific Co.,* 421 F.2d 92, 96 (9th Cir.1970).

■ As to defendant's intent, plaintiff has not shown that Mr. Kieper intended to do more than persuasively argue his case to the district judge. Plaintiff argues that because the complaint specified when plaintiff suffered the damages claimed, and because Mr. Kieper surely knew the applicable statute of limitations for suit on such claims, then he should have known that plaintiff could not risk a court order granting the motion to dismiss. Therefore, Mr. Kieper should also have known that by arguing lack of jurisdiction, plaintiff would rely on that argument to voluntarily request a transfer. The court cannot take this leap of logic with plaintiff. Plaintiff's actions are simply too far removed from Mr. Kieper's arguments to satisfy the reliance element of the estoppel doctrine.

Next, plaintiff was not ignorant of the true facts. Plaintiff has not shown nor has she even alleged that she was unaware of any relevant facts. Because there has been no showing of hidden facts, the third element of estoppel has not been met.

Finally, the Supreme Court does not recognize a party's reliance upon another party's conduct or statements unless such reliance is reasonable. *See Heckler v. Community Health Servs., Inc.,* 467 U.S. 51, 65, 104 S.Ct. 2218, 2226, 81 L.Ed.2d 42 (1984). In this case Mr. Kieper properly filed a dispositive motion in the district court. The contents of this motion were not legal advice to plaintiff and her counsel, but rather, were legal arguments by an adverse party. Plaintiff made a tactical decision with the help of counsel. She cannot now argue that her reliance on defendant's argument effectively makes defendant responsible for her own conduct. The court finds this position unreasonable.

■ Finally, when considering estoppel against the government, the court must consider that;

[a] party seeking to raise estoppel against the government must establish 'affirmative misconduct going beyond mere negligence'; even then, 'estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.'

*Wagner v. Director, Fed. Emergency Management Agency,* 847 F.2d 515, 519 (9th Cir. 1988) (quoting *Morgan v. Heckler,* 779 F.2d

544, 545 (9th Cir.1985)). In this case, there is no such resulting serious injustice in denying plaintiff's request for estoppel. Plaintiff argues that if the court does not estop the government, the ultimate issue raised by the complaint, whether a contract existed between the parties, will go unresolved. This, however, is not the case. The court has already determined that it has jurisdiction to reach the merits of plaintiff's contract allegations. Based on the foregoing, the court denies plaintiff's requests to estop the government from arguing that no contract existed.

## III. BAILMENT CONTRACT

■ In her complaint, plaintiff maintains that the Army entered into a bailment contract with her to deliver household goods only to her at her mother's residence in Indianapolis, Indiana.[3] She further states that defendant's failure to complete that delivery constituted a breach of contract. The court does not agree with plaintiff's contentions and finds that no such express or implied contract existed between the parties.

Pursuant to 37 U.S.C. § 406 (1976), a service member making a permanent change of station is entitled to transportation of his own and his dependant's household goods. Specifically, § 406(b)(1)(A) states:

> a *member* is entitled to transportation (including packing, crating, drayage, temporary storage, and unpacking) of baggage and household effects, or reimbursement therefor, within such weight allowances prescribed by the Secretaries concerned, without regard to the comparative costs of the various modes of transportation. (emphasis added).

The Army has concluded from this text that "[u]nder the applicable statutes and regulations transportation of a member's personal property is an entitlement that is personal to the member." *Matter of: Shipment & Storage of Household Goods for Divorced Serv. Members,* 61 Comp.Gen. 180, 182 (1981). The Comptroller General extended this principle to divorced spouses by finding that whether property is to be released or shipped to the divorced spouse is a matter for the *member* to decide. 61 Comp.Gen. at 182. (emphasis added).[4]

■ In this case, plaintiff and Sgt. Trotter were still married at the time plaintiff's goods were shipped back to the United States. Even if they had already divorced and it was clear to whom the property belonged, the result would necessarily have been the same. The only bailment contract that could have existed to the benefit of plaintiff in this situation was one between Sgt. Trotter and the Army. If, under the applicable regulations, Sgt. Trotter had requested that the household items be shipped with the express, or implied, intent that they reached plaintiff, then a bailment contract would have existed. That situation clearly did not exist in this case. It should be re-emphasized that Sgt. Trotter was the person responsible for diverting the shipment from Indianapolis, Indiana to Philadelphia, Pennsylvania. Because a dependant's personal belongings are still treated by the Army as personal to the member, no bailment contract could exist between the Army and the plaintiff.

As further support for its finding that no express bailment contract existed between the Army and plaintiff, the court notes that all records relating to Sgt. Trotter's permanent change of station, including all travel orders and authorizations, show that the Army always dealt specifically with Sgt. Trotter. Plaintiff may have had permission

---

**3.** A bailment "connotes a trust or an understanding that one party will deliver personal property to another for a certain purpose, with the express or implied understanding that the chattel will be returned or accounted for when the purpose is accomplished or when reclaimed by the bailor." *Scope Enters. v. United States,* 18 Cl.Ct. 875, 883–84 (1989).

**4.** The Comptroller General recognized that a member may be held in contempt by a state court for violating an order to release a former spouse's property, but further noted that that is a matter between the member, the spouse and the state court. 61 Comp.Gen. at 182. In this case, the Indiana state court awarded plaintiff a $25,000 property settlement to compensate for the loss of the goods in this case. The fact that Sgt. Trotter has not paid the judgment cannot create additional, federal contract rights.

to travel separately from her husband, but she did not have the authority to arrange for the travel herself.

Plaintiff argues that not only did she have the authority to arrange with the Army her own transportation, but also the shipment of her property. To support these arguments, she directs the court's attention to the applicable Joint Travel Regulations (JTR). However, a close reading of the JTR shows that they do not support plaintiff's position, and are, in fact, entirely consistent with the court's findings.

Paragraph M7103(1) of the JTR provides that:

[a] member ... who is permanently stationed outside [the continental United States] may request, and the Secretary of the Service concerned ... may authorize transportation of dependents in accordance with this paragraph to a designated place in the United States ..., notwithstanding the fact that his permanent station remains unchanged.

. . . .

Transportation under subpar. 2, items 7 and 8, and par. M7104, may be authorized upon request of a dependent or former dependent respectively, in lieu of request by the member *if the member is not available or has declined to request dependent transportation.* (emphasis added).

Under subparagraph 2, the types of cases in which transportation of dependents may be authorized is limited to a list of conditions which include:

when determined that the best interests of the member or the member's dependents and the Government will be served by the transportation of one or more of the dependents for compelling personal reasons, such as ... marital difficulties....

Finally, ¶ M8303(5) states that "[t]he official authorizing travel of ex-family members under par. M7104 may also authorize the transportation of household goods subject to the same condition, circumstances, time limits, and terminal points as are contained in par. M7104 for the personal travel of the ex-family members." [5]

Even disregarding the fact that ¶ M8303(5) only provides that *ex*-family members may receive authorization to arrange for the transportation of their own household goods, such authorization may be obtained only if the member is not available or has declined to make a request. Although plaintiff's statement to Mr. Charles E. Brown, Claims Investigator, shows that plaintiff was the individual who actually "had the household goods shipped to Indiana," Appendix to Defendant's Motion for Summary Judgment at 10, it also shows that Sgt. Trotter was under the assumption that their furniture was going to be shipped to New Jersey, where he was stationed awaiting separation. Once he found out that the household property was headed for Indiana, Sgt. Trotter had it diverted to Philadelphia, Pennsylvania. These facts establish that Sgt. Trotter was not unavailable, and he did not decline to make a request. Because the record clearly shows that Sgt. Trotter made the necessary arrangements to obtain transportation for both his wife and her household goods, plaintiff can find no support from ¶ M8303(5).

Plaintiff also argues that there existed an implied in fact contract. As in an express contract, the elements of any alleged implied in fact contract include mutuality of intent, an unambiguous offer, unconditional acceptance and consideration. *H.F. Allen Orchards v. United States,* 749 F.2d 1571 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). Plaintiff argues that all these conditions are met because plaintiff paid the Army an extra fee of $18.82 to cover excess costs, and to have her separate belongings shipped directly to her mother's residence in Indiana, and because the government admits that plaintiff paid an extra mileage charge in connection with the December 1985 shipment of goods to Sgt. Trotter. With plaintiff's payment and defen-

---

5. Paragraph M7104 deals with transportation of dependents who are actually divorced. It contains a provision similar to ¶ M7103(1) in that it authorizes an ex-family member to request their own transportation if the member who was their former sponsor is not available or has declined to make such request.

dant's acceptance, plaintiff argues that a reasonable jury could find an offer, a meeting of the minds and mutuality of intent. Without more, the court cannot agree.

■ At the time such payment was requested and received, the Army, at the request of its member, was prepared to ship the property to Indiana. The court can find no reason why payment by the member's wife, rather than the member himself, should create, in the mind of the individual receiving the payment on behalf of the Army, a mutuality of intent between plaintiff and the Army. The Army's intent, as established by the documentation and by its conduct, was simply to ship Sgt. Trotter's goods to his requested destination.

■ Even if plaintiff had been able to establish that an Army official told her that for a sum certain the Army would ship her property to Indiana, she must additionally show that that official had the actual authority to bind the government to such a contract. *See ATL, Inc. v. United States,* 4 Cl.Ct. 672, 675 (1984). Any party who contracts with the government must take upon themselves the risk of having correctly determined that the government official dealt with did not exceed their authority, including the authority to bind the government. *California Sand & Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 26 (1990) (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)). It is plaintiff's responsibility to establish actual authority. *Housing Corp. of Am. v. United States,* 468 F.2d 922, 925, 199 Ct.Cl. 705, 711 (1972). In this instance, plaintiff has provided no evidence to support a showing that the representative who requested and/or received plaintiff's payment had the authority to contractually bind the Army to a contract with her. Therefore, she has not met her burden.

### CONCLUSION

For the foregoing reasons, the court finds that it does have jurisdiction to consider plaintiff's contract claims. However, these claims must be dismissed on the merits since the statute and regulations at issue could create no contractual relationship between plaintiff and the United States. Despite plaintiff's ownership of the household goods in question, such goods are personal to Sgt. Trotter for purposes of their transportation from Germany to the United States. Accordingly, no contract for specific transportation of plaintiff's property to Indianapolis, Indiana existed between the Army and plaintiff. Any wrong done to plaintiff in this case was done not by the United States, but by her former husband. As defendant has shown that no genuine issues of material fact exist, the government's motion for summary judgment must be granted.

Finally, plaintiff has moved in the alternative for the court to transfer this case back to the original forum to try its conversion claim. Because this court has reached the merits of plaintiff's contract claim, and because this court sees no basis for jurisdiction in the district court, plaintiff's motion to transfer is denied.

It is so ordered.