**SECURITY BANK AND TRUST CO.**
**Blackwell, Oklahoma, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–616C.

United States Court of Federal Claims.

July 22, 1994.

James R. Rodgers, Blackwell, OK, for plaintiff.

Jeffrey J. Bernstein, Washington, DC, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Dir., Terrence S. Hartman, Asst. Dir. Robert L. Huddle, U.S. Dept. of Agr., Stillwater, OK, of counsel.

## OPINION

ROBINSON, Judge.

This case is again before the court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. This court previously ruled that neither the doctrine of *res judicata* nor collateral estoppel operate to preclude the Government from defending its administrative setoff of amounts owed it under a Commodity Credit Corporation administrative program involving certain payment in kind certificates. *Security Bank & Trust Co. v. United States,* 26 Cl.Ct. 693 (1992). After briefing and oral argument, the court concludes that defendant's October 5, 1992 motion for summary judgment will be granted in its entirety and plaintiff's November 19, 1992 cross-motion will be denied. The court's reasoning follows.

### Background

On December 6, 1986, Ms. LaVeta Shoffner entered into a contract with the United States Department of Agriculture, Commodity Credit Corporation (CCC), to participate in the Agriculture Stabilization and Conservation Service (ASCS) 1987 wheat deficiency program. On January 27, 1987, Ms. Shoffner assigned to plaintiff Security Bank and Trust Company (SBT) the $50,000 wheat deficiency benefit to which she was entitled for the 1987 crop year under the ASCS program. Previously, on September 10, 1986, Ms. Shoffner and SBT signed a financing statement covering all of Ms. Shoffner's crops for the growing year 1986–87. The financing statement was duly filed, and SBT acquired a perfected security interest in those crops pursuant to applicable Oklahoma Commercial Code requirements.

Ms. Shoffner's contract with the Government incorporates several regulations proscribing the assignment of deficiency payments which are made in a form other than cash. Among those proscriptions are 7 C.F.R. § 713.153(b) (1987) and 7 C.F.R. § 770.6 (1987). Part 7, § 713.153(b) provides:

> Any producer entitled to any payment may assign any such payments *which are made in cash* in accordance with the regulations governing assignment of payment found at Part 709 of this chapter.

(emphasis added). Part 7, § 770.6 provides:

> Notwithstanding any other provision of this chapter, a payment made under this Part may not be the subject of an assignment, except as determined and announced by the CCC.

On November 30, 1987, the Deputy Administrator directed ASCS to make all 1987 wheat deficiency payments, "except those not subject to the $50,000 payment limitation," in CCC–6's, which are commodity certificates, commonly known as PIK (payment in kind) certificates. Ms. Shoffner earned $55,442.32 in deficiency payments for the 1987 wheat crop year. Of the $55,442.32 Ms. Shoffner earned, $46,865.61 was subject to the $50,000 payment limitation and, thus payable in PIK certificates.

On November 23, 1987, the Department of Agriculture asserted administrative setoffs totalling $29,823.57 against wheat deficiency payments due Ms. Shoffner in payment of two separate loans owed to defendant by Ms.

Shoffner.[1] The remaining payments due Ms. Shoffner were distributed as follows: $17,042.04 in PIK certificates were distributed to Ms. Shoffner's Bankruptcy Trustee, $5,743.33 was paid by check to the Bankruptcy Trustee, and a check for $2,833.38 was issued to Ms. Shoffner.

The procedural history of this case is set forth in this court's August 28, 1992 opinion denying plaintiff's July 3, 1991 motion for summary judgment and is as follows:

On April 6, 1987, Ms. Shoffner filed a voluntary petition under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 701 *et seq.* (1982). On May 22, 1987, SBT filed a complaint in the Bankruptcy Court seeking $23,523.59 from the Bankruptcy Trustee, based upon SBT's perfected security interest....

On March 10, 1988, the Bankruptcy Court issued its opinion in *In re George*, 85 B.R. 133 (Bankr.D.Kan.1988)[2]. The court held that neither the corporate authority of the CCC nor the enabling language of the Food Security Act of 1985, 7 U.S.C. § 1 *et seq.*, provided the CCC with the express authority to preempt state commercial law. Therefore, the court found that the CCC anti-assignment regulations were unenforceable. Pursuant to that decision, the trustee paid SBT $13,671.21 on June 17, 1988. SBT then filed an action in the United States District Court for the Western District of Oklahoma against the CCC, alleging that defendant had wrongfully diverted funds owed to plaintiff by virtue of Ms. Shoffner's assignment of benefits to SBT. On April 10, 1990, the District Court issued an order transferring the lawsuit to the United States [Court of Federal Claims]. On July 23, 1990, SBT filed

its complaint in the instant case seeking $29,823.57, or the balance of the sum assigned to plaintiff by Ms. Shoffner.

*Security Bank & Trust Co.*, 26 Cl.Ct. at 694.

Following this court's August 28, 1992 ruling, defendant filed the present motion for summary judgment on October 5, 1992. Plaintiff filed its cross-motion for summary judgment on November 19, 1992.

### Contentions of the Parties

Defendant contends that Ms. Shoffner's contract with the ASCS prohibited the assignment of commodity certificates; thus, the Assignment of Claims Act, 31 U.S.C. § 3727 (1988), 41 U.S.C. § 15 (1988), precludes Ms. Shoffner's assignment to SBT. As a result, according to defendant, SBT has no rights under the assignment, and its complaint must be dismissed.

Plaintiff contends that it is entitled to the entire amount it seeks because of its duly filed financing statement. Plaintiff explains that the filing of the financing statement precluded the Government from properly setting off payments.[3]

### DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over material facts, facts that affect the outcome of the suit, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence would permit a reasonable finder of

---

1. Defendant provides a January 26, 1993, affidavit of Harold Dick, ASCS Program Specialist, for its contention that $29,823,57 offset by defendant was payable in PIK certificates. Mr. Dick states that because Ms. Shoffner failed to request a cash advance, all wheat deficiency payments to her, except those not subject to the $50,000 payment limitation, were to be made in PIK certificates. Thus, according to Mr. Dick, $46,865.61 of the $55,442.32 earned by Ms. Shoffner was payable in PIK certificates.

2. In *George*, the Bankruptcy Court adjudicated four related cases including *In re Shoffner*.

3. Initially, plaintiff also contended that even if it could not recover on the basis of the financing statement, it should receive a partial award from this court, to the extent that the administrative setoff was against cash payments, because only part of the deficiency payment to Ms. Shoffner was in commodity certificates. During oral argument on the parties' cross-motions, however, plaintiff agreed that all of the funds at issue in this case were paid in commodity certificates.

fact to return a verdict in favor of the non-movant. *Id.* Both plaintiff and defendant, as moving parties, have the burden of establishing that there are no genuine material issues in dispute and that, as movant, they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In opposing the other's motion, each party has the burden of providing sufficient evidence, not necessarily admissible at trial, to show that a genuine issue of material fact indeed exists. *Celotex,* 477 U.S. at 322, 324, 106 S.Ct. at 2552, 2553. If the non-movant's evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed. Cir.1988).

■ That the parties, in their cross-motions, have separately alleged the absence of genuine issues of material fact, does not relieve the court of its responsibility to determine the appropriateness of summary disposition of the matter. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987)). In this case, the record submitted to the court confirms the parties' contentions that no material facts are in dispute. Consequently, the court finds that this matter may be disposed of on the parties' pending cross-motions.

Plaintiff contends that it may recover based on its assignment from Ms. Shoffner. Plaintiff points out that a notice of assignment by Ms. Shoffner to plaintiff was entered on the debt record of the ASCS county office on January 27, 1987. Defendant did not assert its administrative setoff until November 23, 1987. Plaintiff adds that 7 C.F.R. § 13.8(a)(1), governing setoffs where the debtor has assigned it rights, only allows setoffs of debts of the assignor when the debts "were entered on the debt record of the ASCS county office *prior to* the date the notice of assignment was accepted by such

county office." 7 C.F.R. § 13.8(a)(1) (1987) (emphasis added).

Alternatively, plaintiff argues that the administrative setoffs of $29,823.57 executed by the Department of Agriculture on November 23, 1987, were improper because plaintiff held a perfected security interest in Ms. Shoffner's crops which took precedence over defendant's right to setoff. Plaintiff relies on 7 C.F.R. § 13.5(a) (1987), which states:

Setoff ... shall not be made if the amount available for setoff ... represents loan or purchase proceeds with respect to a commodity which is subject to the rights of the holder of a valid enforceable prior lien on such commodity. However, any amount that exceeds the amount of the prior lien shall be available for setoff.

Thus, plaintiff concludes, defendant improperly diverted funds to which plaintiff was entitled.

Defendant responds that plaintiff may only recover on the basis of the assignment from Ms. Shoffner to plaintiff. On this basis, says defendant, plaintiff ostensibly may recover under the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15. Defendant adds, however, that because the administrative setoff exercised by the ASCS was made against PIK certificates, not cash, plaintiff may not even recover under the Assignment of Claims Act because the contract between defendant and Ms. Shoffner prohibits the assignment of non-cash payments. Defendant relies on 7 C.F.R. § 713.153(b) and 7 C.F.R. § 770.6, which are incorporated into the contract by reference. Defendant also points out that the contract incorporates 7 C.F.R. § 770.2 (1987), which allows the CCC to make non-cash payments including PIK certificates.

Otherwise, says defendant, plaintiff has failed to establish any substantive provision of law, regulation, or the Constitution, which can be fairly construed as mandating compensation under the Tucker Act, 28 U.S.C. § 1491 (1988). Thus, defendant urges, plaintiff may not recover on the basis of its duly filed security interest in Ms. Shoffner's 1987 wheat crops.

In order to state a claim within the jurisdiction of this court, plaintiff must either be in privity of contract with the United States or establish some substantive provision of law, regulation, or the Constitution, which can be fairly construed as mandating compensation. 28 U.S.C. § 1491; *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). In attempting to satisfy this jurisdictional threshold, plaintiff advances two theories. First, plaintiff claims that it has priority over the defendant's right to setoff due to its duly recorded financing statement. Plaintiff next argues that it may recover from defendant since the defendant is the obligor under its contract with Ms. Shoffner. Ms. Shoffner, plaintiff explains, assigned her rights under that contract to plaintiff on January 27, 1987. Neither of plaintiff's theories satisfies the jurisdictional threshold of this court.

Plaintiff's first theory of recovery focuses on plaintiff's rights under state commercial law. Plaintiff urges the court that this case fits within the jurisdiction of the court under the Tucker Act since it is a case "for liquidated or unliquidated damages ... not sounding in tort." 28 U.S.C. § 1491(a)(1). Plaintiff would have the court then rule that the federal regulations prohibiting assignment of PIK certificates may not supplant the plaintiff's rights under state law. Plaintiff, however, misapprehends the limited nature of the jurisdiction of the court. This court need not address whether the priority issue in this case is governed by state or federal law since plaintiff has failed to translate its claim under Oklahoma commercial law into a theory of recovery within the jurisdiction of this court, which is governed by federal law. The Tucker Act is only a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *Testan,* 424 U.S. at 398, 96 S.Ct. at 953. The Act confers jurisdiction upon the court only when a substantive right exists.

*Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599, 605–07 (1967).

Plaintiff's next argument relies on the only provision—the Assignment of Claims Act—which could possibly create a substantive right and allow plaintiff to fit its claim within the jurisdiction of the court. As defendant points out, however, even this statute is of no avail to plaintiff, since it precludes assignment of a claim against the Government where the contract forbids the assignment. 31 U.S.C. § 3727(c)(1), 41 U.S.C. § 15. Here, the contract between defendant and Ms. Shoffner only allowed Ms. Shoffner to assign payments made in cash. 7 C.F.R. § 713.153(b), 7 C.F.R. § 770.6. Defendant, pursuant to its rights under the contract, elected to make non-cash payments in the form of PIK certificates. *See* 7 C.F.R. § 770.2. Therefore, plaintiff's claim under its assignment from Ms. Shoffner is ineffective against the Government under the Assignment of Claims Act.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment accordingly. No costs.