**Alfredo Urbina RAMIREZ, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 95–224 C.**

United States Court of Federal Claims.

Sept. 4, 1996.

---

Duncan C. Turner, Seattle, WA, for plaintiff.

Paul Herrup, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and David Epstein, Washington, DC, for defendant.

## OPINION and ORDER

TURNER, Judge.

This is a case of first impression. Plaintiff sues to enforce a judgment rendered in Honduras against the United States government. The case stands on defendant's motion filed July 12, 1995 to dismiss the complaint for lack of subject matter jurisdiction. We conclude that defendant's motion must be granted.

### I

In December 1988, the U.S. Army Corps of Engineers (the "Corps") executed a lease with plaintiff to rent approximately 250 acres in Las Delicias, Honduras.[1] The lease term began on October 1, 1989 and was to last one year, although it provided for two annual renewals at defendant's option. The lease remained in effect until September 30, 1992. Defendant paid $7,500 (15,000 Honduran lempiras) in rent annually. The Army used the land for military training.

---

1. The facts recited in the text are culled from pleadings and briefs. In ruling on a defendant's motion to dismiss made pursuant to RCFC 12(b)(1), "the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed.Cir. 1996). *See also Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995).

Paragraph seven of the lease states in part: "The Government shall ... return the premises in as good condition as that existing at the time of entering upon the same under this lease...." However, during its time of possession, defendant cut trees, built barracks, quarried and crushed rock, removed topsoil and spread 10,000 cubic yards of crushed rock on the land; further, prior to returning the property to plaintiff, defendant crushed wellheads it had built and bulldozed buildings.

Before the lease term ended, plaintiff demanded in writing that the Army, pursuant to paragraph seven of the lease, return the land to its condition at the time the lease began. The Corps sent Rick Dean from its Mobile, Alabama district office to investigate. After returning from Honduras, and prior to taking or recommending any action, Dean died. The Corps apparently did not take any other steps to investigate plaintiff's complaint or to restore his land.

On February 25, 1993, plaintiff initiated an "Ordinary Lawsuit for Damages" against the U.S. Army in the Court of First Instance, Olanchito Section, Department of Yoro, Honduras, naming the "Army of the United States of North America" as the defendant.[2] Plaintiff alleged breach of contract and physical damage to the land. Plaintiff attempted to serve U.S. Army Colonel Robert Killebrren personally at a U.S. Army base, but the base commander twice refused to allow the process server to enter the camp. In accordance with Honduran law, service was then attempted by both newspaper and radio advertising.

Defendant failed to appear or to defend itself.[3] The Honduran court appointed an attorney, Oger Bautista Ucles, as *curator ad litem* to represent defendant. Ucles telephoned the U.S. Embassy in Tegucigalpa regarding the suit, but failed to raise the embassy personnel's interest. Ucles stated to the trial court: "No one was interested in this issue and therefore it was not possible to develop legal arguments with which to defend our client, the defendant." Pl.'s Opp'n, Ex. 5, p. 13.

After a trial, the Honduran court rendered judgment against the U.S. Army on March 9, 1994, awarding plaintiff damages of 5,400,000 lempiras (approximately $1.5 million). Ucles appealed the judgment; on April 11, 1994, the appeals court in La Ceiba, Department of Atlantida, Honduras, affirmed the trial court. Plaintiff then filed the instant action seeking the recognition and enforcement of the Honduran trial court's judgment.

## II

### A

■ To be enforced, a foreign judgment must first be recognized. Recognition occurs when a domestic court denies relitigation of a claim or factual dispute on the basis of previous foreign litigation. *See* Restatement (Second) Conflict of Laws, Chap. 5, Topic 2, Introductory Note & § 98 (1969); Restatement (Third) Foreign Relations Law of the United States § 481 & cmts. a & b (1986); Robert B. von Mehren & Michael E. Patterson, *Recognition and Enforcement of Foreign Country Judgments in the United States,* 6 Law & Pol'y Int'l Bus. 37, 38 (1974).

■ Once a foreign judgment is recognized, enforcement occurs when the domestic court orders the judgment debtor to satisfy the foreign judgment. *See* Restatement (Second) Conflict of Laws, *supra* at Introductory Note; Restatement (Third) Foreign Relations Law of the United States, *supra;* von Mehren & Patterson, *supra.*

### B

■ The United States is not a party to any bilateral or multilateral treaty requiring

---

2. The lawsuit named Colonel James Knight and Colonel Robert Killebrren as the Army's personal representatives for the purposes of the lawsuit. Knight and Killebrren are both identified in the Honduran court's judgment as "the Commanding Officer of the Bravo Task Force." Knight apparently succeeded Killebrren as the Bravo Task Force commander.

3. Although the U.S. Army was the named defendant in the Honduran litigation, for the purpose of this motion, we assume that the suit was against the United States government.

the recognition and enforcement of foreign judgments.[4] In the absence of any statutory or constitutional requirement to recognize and enforce a foreign judgment, federal courts will enforce a foreign judgment that is valid and fair pursuant to the doctrine of comity. *See, e.g., Hilton v. Guyot*, 159 U.S. 113, 202–03, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895) ("[W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.").

■ Comity is a common law doctrine.[5] Comity "is a doctrine relating to the discretionary degree of recognition that one nation or jurisdiction accords to the judicial or legislative acts of another nation or jurisdiction." *Majorica, S.A. v. Majorica Intern. Ltd.*, 687 F.Supp. 92, 96 (S.D.N.Y.1988). As the Supreme Court noted in *Hilton*, " '[c]omity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." 159 U.S. at 163–64, 16 S.Ct. at 143. *See also Societe Nationale Industrielle Aerospatiale v. District Court*, 482 U.S. 522, 543 n. 27, 107

S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461 (1987); *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir.1994); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d Cir.), *cert. denied*, 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993) ("As a general rule, comity may be granted where 'it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated.' " (quoting *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 457 (2d Cir.1985))).

### III

This court and its predecessor court have had few occasions to address issues involving foreign judgments. Neither the parties nor we have found any case authority regarding the enforcement of a foreign judgment against the United States.

### A

Defendant has raised several grounds in support of its assertion that the court lacks subject matter jurisdiction to adjudicate plaintiff's claim. We find one of defendant's assertions (absence of congressional authorization) convincing and dispositive; consequently we find it unnecessary to address the remaining arguments.[6]

Plaintiff seeks recognition and enforcement of a judgment pertaining to a contract claim. He is not suing at this time on the alleged breach of paragraph seven of the contract. The sole statute upon which plaintiff relies for jurisdiction is 28 U.S.C. § 1491(a)(1). (We concur that this is the only possible statutory basis for jurisdiction

---

4. The United States is currently negotiating such a treaty at the Hague Conference on Private International Law. For a description of the proposed treaty, see Eric B. Fastiff, Note, *The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems*, 28 Cornell Int'l L.J. 469 (1995).

5. In contrast, as a matter of federal constitutional law, states are required to enforce the judgments of the other states. U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each

State to the public Acts, Records, and judicial Proceedings of every other State. . . ."). *See also* 28 U.S.C. § 1738.

6. One of defendant's contentions is that plaintiff has failed to satisfy the jurisdictional requirements of 28 U.S.C. § 2502(a), which permits a foreign plaintiff to proceed in this court only if U.S. citizens may maintain actions against the foreign plaintiff's government in its courts. If plaintiff faced no other jurisdictional impediments, a showing of full compliance with § 2502(a) would, of course, be required.

of the claim.) However, that statute extends jurisdiction (and waives sovereign immunity) only for claims founded upon contract or legislation. We must explore whether plaintiff's claim is founded upon either.

**B**

■ The federal sovereign's consent to be sued must be explicit. "The United States, as sovereign, cannot be sued without an *express* waiver of its sovereign immunity." *Kanemoto v. Reno,* 41 F.3d 641, 644 (Fed. Cir.1994) (emphasis added).

This principle of comprehensive sovereign immunity has been an aspect of American jurisprudence since the founding of the Republic. Alexander Hamilton wrote in *The Federalist:*

> It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without [the sovereign's] consent.* This is the general sense and the general practice of mankind.... The contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no pretensions to a compulsive force. They confer no right of action independent of the sovereign will.... [T]o ascribe to the federal courts, by mere implication, and in destruction of a preexisting right of the State governments, a power which would involve such a consequence, would be altogether forced and unwarrantable.

The Federalist, No. 81, at 487–88 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis in original). Although Hamilton was writing to quell concerns over States being haled into federal court and being subject to the whimsy of citizens of another state, his description of the tradition of sovereign immunity is also applicable to the federal sovereign. *See Glidden Co. v. Zdanok,* 370 U.S. 530, 563–64, 82 S.Ct. 1459, 1479–80, 8 L.Ed.2d 671 (1962) (Harlan, J.); *Lynch v. United States,* 292 U.S. 571, 580–81, 54 S.Ct. 840, 844–44, 78 L.Ed. 1434 (1934); *Williams v. United States,* 289 U.S. 553, 577, 53 S.Ct. 751, 759, 77 L.Ed. 1372 (1933); *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). The federal government may act as it chooses and be liable for those actions only when—and where—it chooses.

**C**

■ Federal courts are courts of limited, rather than general, jurisdiction.

We begin by noting the limits of federal jurisdiction. "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Congress created the [Court of Federal] Claims ... to permit "a special and limited class of cases" to proceed against the United States, *Tennessee v. Sneed,* 96 U.S. 69, 75, 24 L.Ed. 610 (1878) [1877], and the court "can take cognizance only of those [claims] which by the terms of some act of Congress are committed to it," see *Thurston v. United States,* 232 U.S. 469, 476, 34 S.Ct. 394, 395, 58 L.Ed. 688 (1914); *United States v. Sherwood, supra,* at 586–589, 61 S.Ct. at 769–71.

*Hercules, Inc. v. United States,* —— U.S. ——, ——, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996). *See also Beck v. Secretary of Dep't of Health and Human Servs.,* 924 F.2d 1029, 1036 (Fed.Cir.1991); *McCurty v. United States,* 30 Fed.Cl. 108, 110–11 (1993) ("[T]he jurisdiction of this court is, like every ... federal American court, limited by the Constitution and by various statutes").

The Court of Federal Claims's "power is limited to that which Congress has *expressly* given to it, in Chapter 91 of Title 28 as well as in other statutes[,] ... to adjudicate certain types of disputes." *Beck,* 924 F.2d at 1036 (emphasis added). The Court of Federal Claims, therefore, "has no general jurisdiction over claims against the United States and can take cognizance only of those [claims] which by the terms of some act of Congress are committed to it." *Thurston v. United States,* 232 U.S. 469, 476, 34 S.Ct. 394, 395, 58 L.Ed. 688 (1914) (citing *Johnson v. United States,* 160 U.S. 546, 549, 16 S.Ct.

377, 378, 40 L.Ed. 529 (1896)); *see also Hercules, supra; United States v. Sherwood,* 312 U.S. 584, 586–89, 61 S.Ct. 767, 769–71, 85 L.Ed. 1058 (1941).

**D**

■■■ Absent a specific statute vesting the court with jurisdiction, *see e.g.,* 28 U.S.C. § 1495 (damage claims for unjust conviction), 28 U.S.C. § 1497 (damage claims by oyster growers), 28 U.S.C. § 1498 (damage claims for unlicensed use of patents and copyrights), a claim for monetary relief may be predicated only on the Tucker Act, 28 U.S.C. § 1491(a). The Tucker Act grants the Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Common law causes of action, such as the enforcement of a foreign judgment, are not included in that jurisdictional grant.

■■■ While the Tucker Act provides jurisdiction to proceed in this court with a monetary claim against the federal government, *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), it "does not create any substantive right enforceable against the United States for money damages." *Id.* at 398, 96 S.Ct. at 953. *See also United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980) (*Mitchell I* ); *Security Bank & Trust Co. v. United States,* 31 Fed.Cl. 589, 593 (1994). Monetary relief may only be granted if it is expressly authorized by a separate statute, a constitutional provision, a regulation or a contract. *Testan,* 424 U.S. at 400, 96 S.Ct. at 954. ("The asserted entitlement to money damages depends on whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (citation omitted)). *See also Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1554 (Fed.Cir.1994) (*en banc* ); *Appalachian Regional Healthcare, Inc. v. United States,* 999

F.2d 1573, 1577 (Fed.Cir.1993); *Trayco, Inc. v. United States,* 994 F.2d 832, 837 (Fed.Cir. 1993); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

**E**

■■■ As explained above, comity is a common law doctrine. It does not possess the legislative mandate of a constitutional provision, a statute or even a regulation. Common law doctrines giving rise to relief do not include suits against the sovereign. The Tucker Act's consent to suit does not extend to common law causes of action. Until Congress provides by statute for the recognition and enforcement of judgments against the United States, we are devoid of jurisdiction.

Even in *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II* ), which plaintiff relies upon for its argument for a broad reading of the Tucker Act, there were statutes involved. The question in *Mitchell II* was whether certain timber management statutes and regulations promulgated pursuant to the statutes could hold the United States "accountable in money damages for alleged breaches of trust in connection with its management of forest resources on allocated lands...." *Id.,* 463 U.S. at 207, 103 S.Ct. at 2963. Although the Supreme Court was divided in interpreting the timber statutes as mandating compensation, the issue revolved around statutes. Plaintiff's claim in the case at bar does not mirror the *Mitchell II* dispute because plaintiff relies on a common law cause of action.

**IV**

■■■ We next address plaintiff's assertions that his action for enforcement is "founded ... on a contract" and is thus within the jurisdictional grant of the Tucker Act. An action on a contract with the government does not require a separate money mandating statute.

Where Congress has given specific authority to Federal officials to negotiate and enter contracts on behalf of the United States, ... a court is not required to make further inquiry to determine whether the

source of substantive law separately mandates compensation. Where such contract has been made, a claim founded upon a breach is cognizable in this court. *Town of North Bonneville, Wash. v. United States,* 5 Cl.Ct. 312, 319 (1984). *Cf. Thermalon Industries, Ltd. v. United States,* 34 Fed.Cl. 411, 420 (1995) ("If the government were to choose a bilateral arrangement that satisfies the traditional requirements for a contract, then that arrangement would fall within the scope of this court's Tucker Act jurisdiction."). There is no disagreement in the asserted (and assumed) facts of the case at hand that the parties entered into an express contract. The question now is whether plaintiff's current action for enforcement of the Honduran judgment is also "founded" on the contract, so that we may exercise jurisdiction absent a money-mandating constitutional provision, statute or regulation.

■■■ Plaintiff's action in the Honduran court was "founded" on a contract; there plaintiff alleged a breach of paragraph seven of the lease agreement. The action at bar seeks to enforce the Honduran judgment, which arose from a determination that defendant breached the contract. The action on the contract is therefore once-removed, as plaintiff is suing to enforce a judgment based on an express contract cause of action. It is merely fortuitous that plaintiff's Honduran judgment arose from a breach of contract claim. An action to enforce against the United States government a foreign judgment founded on any claim, be it contract, takings, tort or patent infringement, is not cognizable under the Tucker Act.

## V

Plaintiff has not identified any legislation mandating the United States to pay foreign judgments rendered against it.

## A

■■■ Plaintiff argues that the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. § 1602 *et seq.,* constitutes a waiver of defendant's sovereign immunity. However, the FSIA applies to "foreign states," which include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state...." 28 U.S.C. § 1603(a). The FSIA does not apply to the United States. *See* 28 U.S.C. §§ 1605–07.

## B

■■■ Plaintiff also points to 50 U.S.C. § 1431, which enables the President to direct departments and agencies to enter into contracts which benefit the national defense. Plaintiff argues that when defendant enters into contracts pursuant to this statute, defendant waives sovereign immunity. Certainly Congress has waived sovereign immunity for claims based on authorized contracts. *See* part IV, *supra.* But nowhere does 50 U.S.C. § 1431 or its implementing regulations and executive orders require the United States to pay a judgment awarded against it by a foreign court.

## VI

■■■ Finally, plaintiff asserts that this court has jurisdiction over his claim under the Tucker Act provision for "liquidated or unliquidated damages in cases not sounding in tort." This jurisdictional basis in the Tucker Act is a legal orphan. As stated in *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), "[w]e need not now explore the full shape of that still-amorphous and unfamiliar part of our jurisdiction...." *Id.,* 178 Ct.Cl. at 614, 372 F.2d at 1013. Almost thirty years later, that "part of our jurisdiction" still remains "unfamiliar."

Plaintiff's claim for enforcement of a foreign judgment does not give us the opportunity to become more familiar with the damages provision. Although plaintiff may well argue, with respect to an assertion of jurisdiction under § 1491(a)(1), that he has a claim for liquidated damages in a case not sounding in tort, it is far too late to interpret the current language of § 1491(a)(1) as authorizing claims based on anything other than contracts and legislation. A suit for recognition and enforcement of a foreign judgment is based on neither.

## VII

Based on the foregoing, defendant's motion to dismiss is GRANTED. Accordingly, judgment shall be entered dismissing the action for lack of subject matter jurisdiction.[7]

Each party shall bear its own costs.

7. There are pending two non-dispositive motions: (1) defendant's motion filed June 19, 1995 to stay discovery and (2) plaintiff's cross motion filed June 30, 1995 to compel discovery. These motions are now MOOT.