**Albert J. NIEDBALA, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 95–734 C.**

United States Court of Federal Claims.

Nov. 22, 1996.

---

Albert J. Niedbala, plaintiff, pro se.

Salomon Gomez, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and James Kinsella, Washington, DC, for defendant.

## OPINION and ORDER

TURNER, Judge.

This case stands on defendant's motion filed February 5, 1996 to dismiss plaintiff's complaint for lack of subject matter jurisdiction. We conclude that defendant's motion must be granted.

### I

Plaintiff and his wife are American citizens who reside on Terceira Island, Azores, Portugal. Plaintiff retired from the U.S. Air Force in 1962. The Lajes Field, Azores, U.S. Air Force base security police issued to plaintiff base license plates for two automobiles owned by him and operated in the Azores. It apparently was standard practice from 1987 through 1994 for the base security police to issue base license plates to retired U.S. military personnel residing in the Azores. By registering their cars with the base, retirees were able to avoid paying Portuguese import tariffs and vehicle registration fees.

On January 6, 1995, Portuguese officials became aware of the issuing of base license

plates to retirees. American and Portuguese officials agreed that the issuance of such plates to retired personnel fell outside the Portuguese–American Technical Agreement of 1984, which regulates the American military presence in the Azores. The Portuguese government established a penalty for the wrongfully imported and maintained cars of approximately $6,000 per vehicle. The U.S. Consulate in Ponte Delgada, Azores, intervened on behalf of the retirees, and as a result, the fine was reduced to $200 per vehicle.

On January 20, 1995, Portuguese customs officials apparently seized plaintiff's 1987 Dodge Omni and 1984 Toyota Tercel. Plaintiff asserts that he was unable to pay an assessed import duty equivalent to $35,000 and that he "had to donate" the cars to the Portuguese customs officials, with full tanks of gas, and pay a fine for each car.

Plaintiff's wife wrote to General John M. Loh, Commander, Langley Air Force Base, regarding the loss of their cars. In a letter dated March 13, 1995, General Loh suggested that plaintiff contact the Office of the Staff Judge Advocate at Lajes Field. On June 7, 1995, plaintiff filed a claim for $10,500 as reimbursement of the cost of the vehicles and other expenses resulting from the improper issuance of the base license plates. Def's Mot.App. at 3. By letter of July 20, 1995, Major Laurence M. Soybel, Staff Judge Advocate, Lajes Field, denied plaintiff's claim. The letter indicated that the claim was reviewed under Air Force Instruction 51–501, Chapter 3, Military Claims Act, and 10 U.S.C. § 2733. Major Soybel stated that the claim was denied as there was no evidence of negligence on the part of the U.S. government or a U.S. government employee.

Plaintiff appealed this decision. On September 8, 1995, Lt. Col. Carla S. Walgenbach, Chief, General and International Tort Branch, Tort Claims and Litigation Division, Air Force Legal Services Agency, denied the appeal. Lt. Col. Walgenbach explained that plaintiff had failed to demonstrate negligence by a U.S. government employee. "While you were erroneously allowed to register your vehicles with the U.S. Armed Forces, this was not the reason for your present expenses. Your expenses were incurred as a result of Portuguese law, of which you are presumed to be aware." Def.'s Mot.App. at 1. This was the final denial of the claim processed under the Military Claims Act, 10 U.S.C. § 2733. Plaintiff then presented his claim for $10,500 to this court.

## II

### A

▪ Absent a specific statute vesting the Court of Federal Claims with jurisdiction, *see e.g.*, 28 U.S.C. § 1498 (damage claims for unlicensed use of patents and copyrights), a claim for monetary relief may be predicated only on the Tucker Act, 28 U.S.C. § 1491(a). The Tucker Act grants the Court of Federal Claims jurisdiction to render judgment upon any monetary claim against the United States "founded upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States" in cases not sounding in tort. 28 U.S.C. § 1491(a)(1).

▪ While the Tucker Act provides jurisdiction to proceed in this court with a monetary claim against the federal government, *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), it "does not create any substantive right enforceable against the United States for money damages." *Id.* at 398, 96 S.Ct. at 953. *See also United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *Security Bank & Trust Co. v. United States*, 31 Fed.Cl. 589, 593 (1994). Monetary relief may only be granted if it is expressly authorized by a separate statute, a constitutional provision, a regulation or a contract. *Testan*, 424 U.S. at 400, 96 S.Ct. at 954 ("entitlement to money damages depends on whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained'" (citation omitted)). *See also Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994) (*en banc*); *Appalachian Regional Healthcare, Inc. v. United States*, 999 F.2d 1573, 1577 (Fed.Cir.1993);

*Trayco, Inc. v. United States,* 994 F.2d 832, 837 (Fed.Cir.1993); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc* ), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

**B**

In order to defeat the motion to dismiss for lack of subject matter jurisdiction, plaintiff must demonstrate, pursuant to 28 U.S.C. § 1491(a)(1), that his claim rests either on a contract or on legislation. Plaintiff asserts no claim founded on contract. Consequently, to resolve the outstanding dispositive motion, we must determine whether plaintiff's claim is "founded upon" money-mandating legislation.

Plaintiff, proceeding *pro se,* states no particular theory of his case beyond asserting that Air Force personnel caused his loss and, by implication, that the government should reimburse. We address the case two ways: first, as an appeal seeking judicial review of final agency action, and second, as a claim unrelated to any prior agency action.

**III**

As noted above, the Air Force considered plaintiff's claim as one potentially payable under 10 U.S.C. § 2733. This statute is one of three in a statutory scheme authorizing compensation of persons injured either by members of the armed forces or the military's civilian employees acting within the scope of their duties.[1] The scheme is codified in 10 U.S.C. §§ 2731–2738. Collectively, these statutes are referred to as the "Military Claims Act" (although other acts are also codified in this group). Sections relevant in this case are those pertaining to injuries caused by U.S. forces, definitions and judicial review, §§ 2731, 2733, 2734, 2734a and 2735.

The compensation sections at issue, §§ 2733, 2734 and 2734a, were not enacted simultaneously. Instead, they were enacted independently, in response to specific needs which arose at separate times. The result is that they authorize compensation in different situations.

Section 2733, now known as the Military Claims Act (MCA), was enacted in 1943. Pub.L. No. 78–112, 57 Stat. 372. As currently codified, it authorizes compensation, not to exceed $100,000, for property damage, personal injury or death caused by noncombat activities of armed forces personnel.

Section 2734, the Foreign Claims Act (FCA), was enacted in 1942. Pub.L. No. 77–393, 55 Stat. 880. The FCA authorizes compensation similar to the MCA, except that FCA claims must arise in foreign countries from the acts or omissions of U.S. armed forces personnel abroad. Under both the MCA and FCA, the United States pays the entire amount of authorized settlements.

Section 2734a, the International Agreements Claims Act (IACA), Pub.L. No. 83–734, 68 Stat. 1006, was enacted in 1954 in response to the formation of the North Atlantic Treaty Alliance (NATO). The NATO Status of Forces Agreement (NATO SOFA) includes a claims section (Art. VIII, Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces, June 19, 1951, 4 U.S.T. 1792). Section 2734a implements article VIII by authorizing funds for payment of SOFA claims, be they NATO SOFA or other SOFAs. The United States pays a pro rata share of awards as determined by the relevant SOFA.

It bears emphasis that these statutes do not establish any legal right or entitlement of any individual; they merely authorize designated officials, within their discretion, to make certain payments.

**A**

Section 2733, in the relevant part, provides that the Secretary of the Air Force, pursuant to regulations:

> (a) ... may settle, and pay ... a claim against the United States for—
>
> .     .     .     .     .

---

1. The statutory scheme described in text does not include the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2674–75, a waiver of sovereign immunity from suit for certain domestic tort claims.

(2) damage to or loss of personal property,

.    .    .    .    .

either caused by a civilian officer or employee of ... or a member of the ... Air Force, ... acting within the scope of his employment, or otherwise incident to noncombat activities of that department....

Section 2734 provides in the relevant part: (a) the Secretary [of the Air Force] ... may appoint, under such regulations as the Secretary may prescribe, one or more claims commissions, each composed of one or more officers or employees or combination of officers or employees of the armed forces, to settle and pay ... a claim against the United States for—

.    .    .    . .    .

(2) damage to, or loss of, personal property ... of any ... inhabitant of a foreign country,

.    .    .    .    .

if the damage [or] loss ... occurs outside the United States ... and is caused by, or is otherwise incident to noncombat activities of, the armed forces under his jurisdiction, or is caused by a member thereof or by a civilian employee of the military department concerned....

Major Soybel and Lt. Col. Walgenbach both characterized plaintiff's claim as one addressable under § 2733. However, the regulations implementing § 2733 state that improper claimants are "[i]nhabitants of foreign countries." 32 C.F.R. § 842.48(e) (1995). The regulations define an "[i]nhabitant of a foreign country" as a "person ... whose usual place of abode is in a foreign country." Foreign citizenship is not required. 32 C.F.R. § 842.56(b) (1995). As plaintiff resides in the Azores, he is an inhabitant of Portugal for the purpose of applying §§ 2733–2734a.

The legislative history is clear in this area. In amending § 2733 in 1958 to increase the amount of compensation available for each claim, a House Judiciary Committee report stated: "In overseas areas, the provisions of section 2734 or international agreements, such as the NATO Status of Forces Agreements, are preemptive when a claim is within their scope." H.R.Rep. No. 1551, 85th Cong., 2d Sess. 3–4 (1958).

We conclude that the Air Force was mistaken in its assumption that § 2733 was potentially applicable to plaintiff's claim. Because plaintiff is an inhabitant of Portugal, §§ 2734 and 2734a preempt § 2733.

**B**

■ Section 2734a implements treaties establishing cost-sharing procedures for injuries caused by U.S. armed force personnel abroad. Section 2734a states:

(a) When the United States is a party to an international agreement which provides for the settlement or adjudication and cost sharing of claims against the United States arising out of the acts or omissions of a member or civilian employee of an armed force of the United States done in the performance of official duty, or arising out of any other act, omission, or occurrence for which an armed force of the United States is legally responsible under the law of another party to the international agreement, and causing damage in the territory of such party, the Secretary of Defense or the Secretary of Transportation or their designees may—

(1) reimburse the party to the agreement for the agreed pro rata share of amounts, including any authorized arbitration costs, paid by that party in satisfying awards or judgments on claims, in accordance with the agreement....

(c) A reimbursement or payment under this section shall be made by the Secretary of Defense out of appropriations as provided in section 2732 of this title....

The United States and Portugal are parties to the NATO SOFA which includes a cost sharing provision. Section 2734a authorizes the Secretary of Defense to "reimburse the party to the agreement for the agreed pro rata share of amounts...." The reimbursable "party to the agreement" is the other signatory country, in this case Portugal.

## C

The United States's use of the Azores, however, is governed by a separate SOFA between the United States and Portugal applicable only to that use. Technical Agreement in Implementation of the Defense Agreement between the United States of America and Portugal of September 6, 1951, **Foreign Affairs and National Defense Division, Congressional Research Service, Library of Congress, 99th Cong., 2d Sess., U.S. Military Installations in NATO's Southern Region** (Comm. Print 1986) [hereinafter U.S.–Portugal SOFA]. The claims provision, annex H, art. IX, ¶ 1, states:

> Members of the force or of the civilian component shall not be subject to any proceedings before Portuguese courts in connection with civil claims brought as a result of any act or omission done in the performance of official duty. Such claims shall be settled or adjudicated by Portugal, which shall be reimbursed by the United States pursuant to Article VIII, paragraph 5, of the NATO SOFA.

Article VIII of the NATO SOFA states in paragraph 5:

> Claims ... arising out of acts or omissions of members of a force or civilian component done in the performance of official duty, or out of any other act, omission or occurrence for which a force or civilian competent is legally responsible, and causing damage in the territory of the receiving State to third parties, other than any of the Contracting Parties, shall be dealt with by the receiving State in accordance with the following provisions:—
>
> (a) Claims shall be filed, considered and settled or adjudicated in accordance with the laws and regulations of the receiving State with respect to claims arising from the activities of its own armed forces....

4 U.S.T. at 1806. The U.S.–Portugal SOFA is modeled after, and refers to, the NATO SOFA. Article V, paragraph 1 of the U.S.–Portugal SOFA states:

> The status of United States Forces as well as that of members of these forces, members of civilian component, and their dependents, shall be governed by this Agreement and its annexes, particularly H, I, and J, and by the provisions of the Agreement between the Parties to the North Atlantic Treaty regarding the Status of their Forces of June 19, 1951.

Terms not defined in the U.S.–Portugal SOFA therefore may be referenced in the NATO SOFA.

A "force" is defined in the NATO SOFA as "the personnel belonging to the land, sea or air armed services of one Contracting Party when in the territory of another Contracting Party in the North Atlantic Treaty area in connection with their official duties...." Art. I, ¶ 1(*a*), 4 U.S.T. at 1794. Countries are described as follows:

> (*d*) "sending State" means the Contracting Party to which the force belongs;
>
> (*e*) "receiving State" means the Contracting Party in the territory of which the force or civilian component is located, whether it be stationed there or passing in transit....

*Id.* at ¶ 1(*d*) & (*e*). Here, the United States is the sending state and Portugal is the receiving state.

The claims procedure provides that when a person has a claim against the United States for harm caused by its armed forces located in another country, that party must make a claim against the host country's armed forces which stand in place of the United States forces for the purpose of the suit.[2] NATO SOFA, art. VIII, ¶ 5(a), *supra.* Because a SOFA exists between the United States and Portugal, § 2734a applies to this case.

Regulations implementing § 2734a give guidance for claim processing. The regulations state, 32 C.F.R. § 842.72 (1995):

> (a) Claims arising in a foreign country.

---

**2.** An example used frequently to explain the NATO SOFA claims procedure is as follows: "[I]f an American soldier driving a jeep on duty in France injures a Frenchman, the claim is settled by the French government as though the injury had been inflicted by a French soldier. The United States reimburses the French Government for 75 percent of the settlement." S.Rep. No. 2324, 83d Cong., 2d Sess. 2 (1954), U.S. Code Cong. & Admin.News 1954, pp. 3570, 3571.

(1) If a third party claimant tries to file an international agreement claim with [the] Air Force, direct that person to the appropriate receiving State office.

(2) If the Air Force receives a claim, send it to the US sending office for delivery to the receiving State.

Thus, upon receipt of a claim from an inhabitant of a foreign country which is a party to a SOFA, the Air Force should not process the claim itself, but instead should pass it on to the foreign country's appropriate authorities. In the case at bar, the Air Force should not have processed Niedbala's claim but rather, pursuant to 32 C.F.R. § 842.72(a)(2), should have, upon receipt, sent the claim to the U.S. "sending office for delivery" to Portugal. Review of the claim by Major Soybel and Lt. Col. Walgenbach was not in accordance with the statutes and regulations governing claims arising in foreign countries party to a SOFA.

While it may seem odd that § 2734a and the NATO SOFA would apply to a situation in which an American citizen is injured overseas by United States armed forces, the NATO SOFA is the exclusive remedy for assertion of a claim of right in such situations. *See* H.R.Rep. No. 1551, *supra*. The limited case law interpreting the NATO SOFA is clear on this point. The case of *Laskero v. Moyer*, No. 89–C–5966, 1990 WL 93276 (N.D.Ill. June 18, 1990), involves circumstances very similar to the case at hand. In *Laskero*, the plaintiff was an American civilian Air Force employee injured at an Air Force base in the United Kingdom by an American sergeant driving a vehicle in the performance of his duty. *Id.* at *1. The court held that Laskero could not sue the sergeant nor the United States under the Federal Tort Claims Act because her exclusive remedy lay with the NATO SOFA. *Id.* at *3. As a result, Laskero could only sue the United Kingdom standing in place of the United States. *Id.*

In *Dancy v. Department of the Army*, 897 F.Supp. 612 (D.D.C.1995), the plaintiff, an American, worked in the Federal Republic of Germany as a civilian employee of the U.S. Army. After his employment was terminated, he continued to use license plates which identified the vehicle as part of the U.S. Army's presence in Germany. In 1989, the car was towed from an illegal parking space to a U.S. government parking area. In 1990, the U.S. government destroyed the vehicle. Plaintiff filed an administrative claim with the U.S. Army seeking compensation for the destruction of his car. The Army denied his claim on the grounds that Dancy's remedy was by means of article VIII of the NATO SOFA. *Id.* at 613.

The *Dancy* court agreed with the Army. The court stated that plaintiff's "claims must be considered, settled, or adjudicated in accordance with the law of the receiving State, which has *exclusive jurisdiction* over the matter." *Id.* at 614 (emphasis added). *See also Lowry v. Commonwealth of Canada*, 917 F.Supp. 290, 292 (D.Vt.1996) ("Thus, SOFA is the sole remedy for line-of-duty torts committed by the armed forces of one NATO nation within the territorial boundaries of another NATO nation."); *Aaskov v. Aldridge*, 695 F.Supp. 595, 598 (D.D.C.1988) ("[A]lthough plaintiffs here might prefer to sue the United States under the Foreign Claims Act, NATO SOFA requires that they file suit against the receiving state according to the laws of that state."); *Brown v. Ministry of Defense of United Kingdom*, 683 F.Supp. 1035, 1038 (E.D.Va.1988) ("Both the case law and legislative history support the proposition that the elements of the sending state 'force' or 'civilian component' which cause injury in a receiving State are, for the purposes of Article VIII, afforded the judicatory status of the receiving State's own forces."); *Shafter v. United States*, 273 F.Supp. 152, 156 n. 4 (S.D.N.Y.1967), *aff'd*, 400 F.2d 584 (2d Cir.1968), *cert. denied*, 393 U.S. 1086, 89 S.Ct. 871, 21 L.Ed.2d 779 (1969).

Plaintiff here is in a similar situation. He is an American citizen claiming to have been injured abroad by American armed forces personnel acting in the line of duty. While the act of distributing base license plates may have been in error, it still was done in the performance of official duty. There is no indication that the distribution of license plates was not officially authorized and approved. Under these circumstances, the pro-

cedure to obtain a remedy is not in suing the United States, but in suing the Portuguese armed forces pursuant to the U.S.–Portugal SOFA.

**D**

On its face, 10 U.S.C. § 2734 (authorizing discretionary payments) would seem also to apply to property loss claims arising in foreign territory. However, consistent with the foregoing concerning the preemption of § 2734a where applicable, an Air Force regulation, 32 C.F.R. § 842.65, specifically dealing with application of the FCA, provides concerning claims thereunder:

A claim [under the FCA] is not payable when it:

. . . .

(r) Is one for which a foreign government is responsible under SOFA, treaty, or other agreement. However, . . . [an Air Force office] may authorize payment of a claim where the foreign government refuses to recognize its legal responsibilities and the claimant has no other means of compensation.

It is assumed that if the Air Force had reviewed plaintiff's claim on the assumption that § 2734, rather than § 2733, provided authorization for payment, it would have reached the same result for the same reasons set forth in its denial of the claim. Thus, while it may be argued that foreign claims of an equitable nature, rather than those asserted as a matter of right, are addressable under S 2734 even when arising in a country with whom the United States has entered a SOFA, the result with respect to plaintiff's claim would not change.

**IV**

**A**

■ We must next determine if we have authority to review the Air Force decision denying plaintiff's claim and to compel a different result. The short, plain answer to this issue is that neither this nor any other court has such authority.

Section 2735 of the Military Claims Act bars judicial review of § 2733, § 2734 and § 2734a determinations. Section 2735 states: "Notwithstanding any other provision of law, the settlement of a claim under section 2733, 2734, [or] 2734a . . . of this title is final and conclusive." Section 2731 of title 10 states: " 'settle' means consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or by disallowance." Denial of a claim—a "disallowance"— is a settlement. *Collins v. United States,* 67 F.3d 284, 286 (Fed.Cir.1995); *LaBash v. U.S. Dep't of Army,* 668 F.2d 1153 (10th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). When Lt. Col. Walgenbach issued her denial, this was a final settlement within the meaning of § 2735.

Courts have generally viewed § 2735 as denying judicial review of final agency actions under statutes mentioned therein. *See, e.g., Collins,* 67 F.3d at 287–88; *Schneider v. United States,* 27 F.3d 1327, 1331–32 (8th Cir.1994), *cert. denied,* 513 U.S. 1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995); *Hata v. United States,* 23 F.3d 230, 232–33 (9th Cir. 1994); *Rodrigue v. United States,* 968 F.2d 1430, 1432–34 (1st Cir.1992); *Poindexter v. United States,* 777 F.2d 231 (5th Cir.1985); *Broadnax v. United States Army,* 710 F.2d 865, 867 (D.C.Cir.1983); *LaBash,* 668 at 1155–56; *Towry v. United States,* 459 F.Supp. 101, 107 (E.D.La.1978), *aff'd,* 620 F.2d 568 (5th Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981). *See also* 5 U.S.C. § 701(a) (judicial review is unavailable when "statutes preclude judicial review" or when "agency action is committed to agency discretion by law").

The Federal Circuit in *Collins* joined several other courts of appeals in finding that § 2735 bars judicial review of Military Claims Act determinations. The *Collins* court quoted with approval *Schneider,* in which that court said it "join[s] our sister circuits in holding that section 2735 is unambiguous and that absent a constitutional claim the disallowance of a claim under the Military Claims Act is not subject to judicial review." *Schneider,* 27 F.3d at 1332; *see Collins,* 67 F.3d at 287. Accordingly, no court has jurisdiction to review plaintiff's claim.

## B

For completeness, it should be noted that some courts have found a theoretical exception to an absolute bar to review. For example, the *Schneider* court stated that § 2735 did not bar judicial review of "constitutional claims." *Schneider*, 27 F.3d at 1332. The Federal Circuit in *Collins* indicated that it agrees that a constitutional claim may exist. In regard to judicial review, *Collins* states:

We are convinced that when Congress included the finality provision in the Military Claims Act it intended that army claims would be considered and disposed of by the army and not by the courts. . . .

We hold that the disallowance of plaintiff's claim under section 2731 by the army settled his claim, and that this settlement was final and conclusive under section 2735 and not subject to judicial review.

*Collins*, 67 F.3d at 287–88. The court then addressed Collins's argument that a constitutional violation occurred. In response to Collins's argument, the court stated:

Finally, the plaintiff argues that the trial court had jurisdiction of his claim because his constitutional rights under the due process clause of the 5th Amendment were violated. In making this argument, he obviously tries to base his claim on a *constitutional exception to the enforcement of the finality clause in section 2735 of the statute*. However, this contention is of no help to him, because the trial court did not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause. This is so because the due process clause does not obligate the government to pay money damages.

*Id.* at 288 (citing cases) (emphasis added). It is unclear from the opinion whether Collins argued that a due process violation occurred in the Army's adjudication of his claim or whether he claimed a due process violation seeking monetary relief. The court interpreted Collins's claim as the latter, and denied relief because the due process clause is not a money mandating provision.

Based on the Federal Circuit's language in *Collins*, it is evident that the court agreed that a constitutional claim exception exists, although it is not clear what claims would justify judicial review.

Importantly, although several courts have examined constitutional claims, none has found a valid claim resulting in actual application of an exception to the bar of § 2735. *See, e.g., Collins; Schneider*, 27 F.3d at 1332 (prohibition of judicial review of Military Claims Act determinations does not violate equal protection [the court assumed existence of an equal protection clause in the Fifth Amendment] even though Federal Tort Claims Act determinations are judicially reviewable, and no due process violation occurred when Air Force conducted ex parte communication with expert); *Hata*, 23 F.3d at 233–34 (Air Force regulations constitutionally sufficient and lack of judicial review not a due process violation); *Poindexter*, 777 F.2d at 234–35 (conclusory allegations of due process violations are not cognizable constitutional claims and Army regulations requiring a showing of negligence, even if different from other services' regulations, did not violate due process); *Broadnax*, 710 F.2d at 867 (no substantial administrative law violations claimed); *LaBash*, 668 F.2d at 1156 (due process is not violated by barring judicial review).

The Military Claims Act "may well permit some limited review, for example where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." *Broadnax*, 710 F.2d at 867 (quoting *Scroggins v. United States*, 397 F.2d 295, 297 (Ct.Cl.), 184 Ct.Cl. 530, 534, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968) (internal quotations omitted)). However, to date statements in cases permitting such a conclusion appear to be dicta. In any event, no such exception would be applicable to plaintiff's claim in the instant case.

## C

In sum, we conclude that neither this court nor any court has jurisdiction to conduct judicial review of the Air Force denial of plaintiff's claim submitted to it.

## V

█ Finally, we address plaintiff's claim as one unrelated to any prior agency action. As noted above, (1) the Tucker Act provides a jurisdictional basis to proceed in this court with a monetary claim against the federal government only if it is based on a contract or on money-mandating legislation, (2) plaintiff does not assert the existence of a contract and (3) the statutes codified in 10 U.S.C. §§ 2731–2738 (referred to as the "Military Claims Act") are not money-mandating and create no entitlement to payment but rather authorize discretionary payments.

We are not aware of any other legislation (and none has been suggested) on which plaintiff's claim may be founded. Therefore, we do not have jurisdiction to entertain plaintiff's claim as one unrelated to prior agency action.

## VI

Based on the foregoing, defendant's motion to dismiss is GRANTED. Accordingly, judgment shall be entered dismissing the complaint for lack of subject matter jurisdiction.

Each party shall bear its own costs.